USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6-25-13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
PRUDENTIAL INVESTMENT MANAGEMENT  :      12 Civ. 5168 (LAP)
SERVICES LLC and PRUDENTIAL BANK & :
TRUST, FSB,                         :
              Plaintiffs,           :      MEMORANDUM & ORDER
                                    :
         -against-                  :
                                    :
MICHAEL FORDE, et al.,              :
                                    :
              Defendants.           :
------------------------------------x

LORETTA A. PRESKA, Chief United States District Judge:

Plaintiffs Prudential Investment Management Services LLC and Prudential Bank & Trust, FSB (collectively, "Plaintiffs" or "Prudential") filed this interpleader action for the purpose of obtaining adjudication of the rights of certain claimants with respect to their claims of entitlement to certain assets held in an IRA ("Disputed Assets") in the custody or possession of Prudential.  The Disputed Assets are held in the name of interpleader defendant Michael J. Forde.  Mr. Forde and his wife Mary Jane Forde (collectively, the "Fordes" or "Defendants") seek release of the Disputed Assets.  The Fordes have asserted four counterclaims against Prudential in their Answer to Prudential's Interpleader Complaint, [dkt. no. 26], which Prudential has moved to dismiss pursuant to Rule 12(b)(6).  For the reasons set forth herein, Prudential's motion [dkt. no. 30] is GRANTED, and the Defendants' counterclaims are DISMISSED.

I. BACKGROUND

    1. <u>The Disputed Assets and Current Litigation</u>

    This is an interpleader action brought for the purpose of determining the rights of certain claimants with respect to their claims of entitlement to the Disputed Assets in the custody or possession of Prudential.  In 2010, Mr. Forde opened an Individual Retirement Account ("IRA") with Prudential Investment Management Services LLC, which is in the custody of Prudential Bank & Trust, FSB.  (<u>See</u> Memorandum of Law in Support of Plaintiffs' Motion to Dismiss, Sept. 14, 2012 [dkt. no. 31] ("Pl. Memo"), at 2.)  Interpleader defendant New York City District Council of Carpenters Annuity Fund (the "Fund") is a jointly-administered employee benefit plan in which Mr. Forde was a participant in and with which he held a retirement account.  (<u>Id.</u>)  The Disputed Assets are those that were purchased by "rolling over" the assets that had been held in Mr. Forde's retirement account in the Fund into the IRA.  (<u>Id.</u>)

    Mr. Forde pled guilty to charges of criminal racketeering and racketeering conspiracy that involved the misuse of funds administered by the Fund.  (Pl. Memo at 1.)  The Fund is seeking restitution and claiming that Mr. Forde's IRA is reachable.  In addition to seeking restitution, the Fund has also filed an amended complaint against Mr. Forde in a related action in this Court seeking monetary damages for injuries caused to the Fund.

(<u>N.Y. Dist. Council of Carpenters Pension Fund, et al. v. Forde,
et al.</u>, 11-cv-5474 (LAP).)

The Fund asked Prudential to place a freeze on Mr. Forde's
account until it can obtain a court order for restitution of the
Disputed Assets.  (Pl. Memo at 1.)  Prudential complied with the
request on March 24, 2010, and although Mr. Forde is currently
permitted to inquire about his account and make investment and
beneficiary changes, he is not able to withdraw any amounts from
the IRA.  (<u>Id.</u> at 3.)  In May 2012, the Fordes executed a
designation of power of attorney for Mary Jane Forde on behalf
of Michael Forde.  (<u>Id.</u>)  In June 2012, Ms. Forde sought to
withdraw the Disputed Assets, and the request was refused.  (<u>Id.</u>
at 3-4.)  After several communications between Prudential, the
Fordes, and the Fund, Prudential filed this interpleader action
on July 2, 2012.  (<u>Id.</u> at 3-5; <u>see</u> Interpleader Complaint [dkt.
no. 1] ("Compl.").)  Including the Fordes, the interpleader
complaint names as defendants the Fund and several Trustees of
the Funds ("Fund Trustee Defendants" or, collectively, "Fund
Defendants"), as parties asserting claims to the Disputed
Assets.

On August 13, 2012, the Fordes answered the complaint and
asserted counterclaims against Prudential of breach of fiduciary
duty, breach of contract, negligence, and conversion.  ("Ans.")
[Dkt. No. 26.]  On the same day, the Fund answered on behalf of

3

the Fund Defendants.  [Dkt. No. 24.]  On September 14, 2012,
Prudential filed the instant motion to dismiss the Forde's
counterclaims.  [Dkt. No. 30.]  The Fordes did not file an
opposition to the motion to dismiss.  Prudential filed a brief
reply on October 5, 2012.  [Dkt. No. 41.]

### 2. Conference and Subsequent Letter Motions

On April 29, 2013, a conference was held in this action and
the related civil action.  (See Transcript of Conference, Apr.
29, 2013 [11-cv-5474, dkt. no. 141] ("Trans.").)  At that
conference, this Court questioned Defendants as to their Rule 11
basis for opposing Prudential's motion to dismiss.  (Trans. at
6.)  The Court asked Defendants' counsel if there is a dispute
over the funds held by Prudential, which counsel acknowledged
there is.  (Id. at 7.)  The Court reminded Defendants' counsel
that an interpleader action is a legal basis for not releasing
the funds and urged counsel to confer and notify the Court
whether they planned on filing a substantive opposition to the
motion.  (Id. at 9, 11–12.)  Defendants were given two weeks to
notify the Court by letter of their intentions.  (Id. at 13.)

On May 13, the Fordes' counsel wrote to this Court
requesting to file an amended answer so that they could re-plead

their counterclaims.[1] ("Fordes May 13 Letter") (attached).  The
Fordes did not indicate that they would be filing a substantive
opposition to Prudential's motion to dismiss.  Besides a lengthy
fact-based argument as to why the Disputed Assets are not
available to creditors, the Fordes conceded that Prudential is
not a fiduciary, (id. at 5 & n.9), and also asserted a new claim
that minimal diversity has not been plead (id. at 6-7).
Prudential responded via letter on May 16, 2013.  ("Prudential
May 16 Letter") (attached).  Prudential argued that the Fordes
failed to present any legal arguments that would support a good
faith basis to oppose the motion.  (Id. at 2.)  Prudential
pointed out that although the Fordes' letter describes in detail
why the Disputed Assets are protected, the issue underlying the
interpleader action is whether or not there are competing claims
to the Disputed Assets and not whether the Fund will ultimately
be able to recover those assets.  (Id.)  Prudential also argued
that the Fordes' request for leave to amend their counterclaims
should be denied as futile.  (Id. at 3.)

     As to the Fordes' claim that the Court lacks subject matter
jurisdiction, Prudential asserted in their letter that minimal

---

[1] Letters were sent to the Court on behalf of both the Forde
Defendants and Prudential in response to the questions posed by
the Court in the April 29 conference.  As the Fordes' letter
requested leave to amend their pleadings, the letter will be
construed as a motion to amend.  That letter and all subsequent
letters are attached.

diversity exists because Mr. Forde is a citizen of New York, and
the Fund has admitted that Fund Trustee Defendant Paul O'Brien
is a citizen of New Jersey.  (Id.)  The Fordes noted that
certain of the Fund's Trustees had been replaced by the time the
interpleader was filed.  (Fordes May 13 Letter at 6.)
Prudential argued that the changes did not impact diversity and
request leave to file an amended complaint to correct the
caption and substitute the new Trustees as defendants.
(Prudential May 16 Letter at 4.)

     The Fordes responded on May 17, 2013 via letter.  ("Fordes
May 17 Letter") (attached).  In this letter, the Fordes withdraw
their contract claims.  (Id. at 2.)  The Fordes now appear to be
asserting solely tort-based claims, based on the duty imposed by
the alleged "custodial relationship and the agency/principal
relationship" between the Fordes and Prudential.  (Id.)  In
support of this principle, the Fordes cite to a completely
inapposite case regarding joint liability.  (Id. (citing
Rastelli v. GoodyearTire & Rubber Co., 79 N.Y.2d 289, 295
(1992).)

     Prudential replied on May 22, 2013 via letter.
("Prudential May 22 Letter") (attached).  Prudential reasserted
that minimal diversity exists and that the Fordes have not, and
cannot, dispute that there are competing claims to the Disputed
Assets.  (Id. at 1.)  Prudential argues that the Fordes'

additional legal claims are meritless and thus the motion to
dismiss should be granted and leave to amend denied.  (Id. at
2.)


II.  DISCUSSION

1. Legal Standard

In assessing a motion to dismiss under Rule 12(b)(6), the
Court must accept all non-conclusory factual allegations as true
and draw all reasonable inferences in the plaintiff's favor.
Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).  To survive
the motion, "a complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible
on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)
(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).
A pleading that offers "labels and conclusions" or "a
formalistic recitation of the elements of a cause of action will
not do."  Twombly, 550 U.S. at 555.  "Where a complaint pleads
facts that are 'merely consistent with' a defendant's liability,
it 'stops short of the line between possibility and plausibility
of entitlement to relief.'"  Iqbal, 556 U.S. at 678 (quoting
Twombly, 550 U.S. at 557) (internal quotation marks omitted).

Leave to amend a complaint should be freely granted when
justice so requires.  Nerney v. Valente & Sons Repair Shop, 66
F.3d 25, 28 (2d Cir. 1995).  Leave may be denied, however, if

the amendment (1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) would prejudice the opposing party, or (4) would be futile.  Foman v. Davis, 371 U.S. 178, 182 (1962); Nerney, 66 F.3d at 28.  Granting leave to amend is futile if it appears that the movant cannot address the deficiencies identified by the Court and allege facts sufficient to support the claim.  Joblove v. Barr Labs., Inc., 466 F.3d 187, 220 (2d Cir. 2006).

2. Motion to Dismiss Fordes' Counterclaims

    The Fordes asserted four counterclaims against Prudential in their answer.  The Fordes assert claims for breach of fiduciary duty, negligence, conversion, and breach of contract. In their first letter to the Court, the Fordes concede that Prudential is not a fiduciary pursuant to the Fordes' contract with Prudential, and so their claim for breach of fiduciary duty is hereby considered withdrawn.  (Fordes May 13 Letter at 5.) The Fordes confirm this in their follow-up letter.  (Fordes May 17 Letter at 2 ("Prudential is not a fiduciary but is a mere custodian and agent under the customer agreement.").)

    Similarly, the Fordes concede that "there is no contract provision which [they] can point to that Prudential specifically breached" and thus have withdrawn their claim for breach of contract.  (Id.)  For the reasons set forth in Prudential's

8

memorandum in support of their motion to dismiss the Fordes'
counterclaims, as well as those discussed at the April 29
conference, the fiduciary duty and contract claims would have
been dismissed for failure to state a claim.  Specifically, the
Fordes cannot make a claim for breach of contract, because their
contract explicitly gives Prudential the right to seek out
judicial intervention under circumstances such as those
currently pending.  (See Pl. Memo at 11-12.)  The customer
agreement specifically notes that if, at any time, Prudential is
made to "believe that any transaction requested is in dispute,
[they] reserve the right to take no action until further
clarification acceptable to [them] is received from [the Fordes]
or the appropriate government or judicial authority." (Id. at
12 (citing the agreement, Declaration of Joy B. Erickson, Sept.
14, 2012 [dkt. no. 32], Ex. A at 5; Ex. B at 6).)  Thus, the
freeze and this interpleader action are well within the bounds
of Prudential's contractual rights.

The claims remaining from the Fordes' answer are tort
claims of negligence and conversion.  Because the relationship
between the Fordes and Prudential is solely one of contract, for
the tort claims to stand the Fordes must allege that Prudential
owed the Fordes a duty of care independent from those
contractual duties imposed.  See New York Univ. v. Cont'l Ins.
Co., 87 N.Y.2d 308, 316 (1995) (A "defendant may be liable in

9

tort when it has breached a duty of reasonable care distinct
from its contractual obligations, or when it has engaged in
tortious conduct separate and apart from its failure to fulfill
its contractual obligations."). The Fordes' tort claims arise
from the same facts that underlie their breach of contract
allegations. (See Ans. ¶¶ 43-53; id. ¶ 44 ("Prudential owes a
duty of care to the Fordes as a custodian of the IRA").)
Prudential is a custodian of the IRA pursuant to their customer
agreement with the Fordes, and thus any "duty" imposed as
custodian is a contractual one. (See Compl. ¶ 21.) Thus, the
Fordes fail to assert a source of their injuries independent
from one that arises out of Prudential's contractual
obligations, and the tort claims must be dismissed. See, e.g.,
Wolf v. Nat'l Council of Young Israel, 694 N.Y.S.2d 424, 425
(1999) ("Since the appellant's conversion counterclaim does not
stem from a wrong which is independent of the alleged breach of
the [] agreements, it was properly dismissed."); State Farm Mut.
Ins. Co. v. Anikeyeva, 950 N.Y.S.2d 726 (Sup. Ct. 2012)
(dismissing a negligence claim as duplicative of contract
obligations).

Further, as Prudential points out in its letters, even
considering the breach of contract claim withdrawn, the tort
claims cannot stand independently. (See Prudential May 22
Letter at 3 ("Courts routinely dismiss negligence claims for

failure to allege an independent, non-contractual duty of care even where the parallel contract claims have also been dismissed.") (citing cases).)

### 3. Amendment Would be Futile

The Fordes request in their opening letter leave to amend their counterclaims.  (Fordes May 13 Letter.)  In this letter, they offer the bases of their proposed new counterclaims, including that the "interpleader has been collusively manufactured by the Fund Defendants and Prudential" (id. at 3); the IRA is "no longer a Fund plan asset susceptible to an extra-judicial 'administrative hold'" (id. at 4); and, that "there can be no good-faith belief by either Prudential or the Fund Defendants that the latter have a genuinely 'adverse' claim to the IRA monies" (id. at 5).  Without specifically identifying the tort claims on which the Fordes would be relying in their amended counterclaims, they imply that they are owed from Prudential "at least the basic duties of a custodian and agent, which Prudential's Customer Agreement acknowledges." (Id. at 4.)  The Fordes also assert that minimal diversity has not been properly pled or proven.  (Id. at 6.)

The Fordes' letter does not indicate any new or legitimate legal basis on which their amended counterclaims would rest. The Fordes' letter consists only of conclusory allegations as to

Prudential's intentions, without answering any of the concerns raised by the Court in the April 29 conference.  The Fordes' accusations as to Prudential and the Fund's collusive action are not supported by the summary of facts provided in their letter. As to legal arguments, which are at best sparse or at worst lacking completely, the only legal duty the Fordes articulate was owed to them from Prudential is one based on a "custodian and agent" relationship which they inadvertently admit is derived solely from their customer agreement with Prudential, despite the Fordes' insistence otherwise.  (Compare Fordes May 13 Letter at 4 ("at least the basic duties of a custodian and agent, which Prudential's Customer Agreement acknowledges") (emphasis added), with, Fordes May 17 Letter at 2 ("The Fordes' tort claims arise from the custodian relationship and the agency/principle relationship . . . neither of which arise solely from the contract.").)  As discussed, supra, tort claims must be based on a duty independent from that created by contract.

Finally, the Fordes fail to work around the only relevant question regarding this interpleader, which is that there are competing claims to the assets.  (See Trans. at 7.)  The Fordes repeat—again relying on conclusory statements only—as counsel did at the conference that the Disputed Assets are out of reach for the fulfillment of restitution or a civil judgment.  (See

Fordes May 13 Letter at 4-5.)  However, as discussed at the
conference, the basis for the interpleader action is whether or
not there are competing claims to the Disputed Assets, and
whether the Fund will ultimately be able to recover those assets
is an issue for properly put to the Court via this interpleader.
(Trans. at 6-7.)


### 4. The Court has Subject Matter Jurisdiction

The Fordes additionally argue in their letters that the
Court lacks subject matter jurisdiction due to the failure to
plead minimal diversity as required by 28 U.S.C. § 1335.
(Fordes May 13 Letter at 6-7; Fordes May 17 Letter at 3.)  28
U.S.C. § 1335—the Federal Interpleader Act—requires "minimal
diversity" between at least two adverse claimants to establish
jurisdiction.  State Farm Fire & Cas. Co. v. Tashire, 386 U.S.
523, 530 (1967).  The Fordes find issue with the fact that one
of the Fund Trustee Defendants, Paul O'Brien, was stated as
being a New York domiciliary in Prudential's Complaint, but his
domicile was corrected to New Jersey domiciliary in the Fund's
answer.  (Fordes May 13 Letter at 6.)  Prudential agrees that
the Fund has admitted that Fund Trustee Defendant Paul O'Brien
is a citizen of New Jersey in their answer, as the Fordes point
out.  (Prudential May 16 Letter at 3.)  Because there appears to
be no dispute about this, minimal diversity has been

13

established, because Mr. Forde is a citizen of New York.   (Ans. ¶ 5.)   The Fund has the most accurate information about the Trustee Defendants.   The fact that Prudential did not have the most accurate information when filing this interpleader action does not alter the existence of minimal diversity.   Prudential shall be allowed leave to amend their interpleader complaint to correct the caption and substitute the new Trustees as defendants.

    III. CONCLUSION

    For the foregoing reasons, Prudential's motion to dismiss the Fordes' counterclaims [dkt. no. 30] is GRANTED, and the Fordes' counterclaims asserted in their answer [dkt. no. 26] are DISMISSED.   The Fordes' request to file an amended answer and re-plead their counterclaims is DENIED.   Prudential may amend the Complaint within 30 days of this Order to correct the caption and substitute the new Trustees as defendants.


SO ORDERED.

Dated:     New York, New York
           June _24_, 2013


                              _Loretta A. Preska_
                              UNITED STATES DISTRICT JUDGE

# LOMBARDI & SALERNO PLLC

Attorneys at Law

••

Dino J. Lombardi
Laure Salerno

52 Duane Street • 7th Floor
New York, New York 10007
Tel. No. (212) 619-8328
Fax. No. (212) 732- 6323

May 13, 2013

**Via Fax No. (212) 805-7941**

The Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re:    ***Prudential Investment Management Services LLC, et al. v.***
       ***Michael J. Forde, et al., Case No. 1:12-cv-05168 (LAP)***

Dear Judge Preska:

As you know, this firm represents the defendants, Michael J. Forde and Mary Forde (the "Fordes"), in the above-referenced interpleader action.

Pursuant to your Honor's direction on April 29, 2013 at the combined status conferences held in this case and in the matter of the New York City District Council of Carpenters Pension Fund, et al., v. Michael Forde, et al., 11-cv-5474 (the "main action"), we hereby respond to the Court regarding how we wish to proceed with respect to the pending motion to dismiss of Prudential and with respect to the interpleader action in its entirety.

We are respectfully requesting leave to move to file an amended answer to re-plead our claims against Prudential and the Fund Defendants[1]. In that regard, we request that the Court conduct a full and comprehensive conference with respect to all claims and issues presented by the interpleader action before requiring a response to the pending motion. We are mindful of the Court's desire to expedite movement in this and the main action but feel that such a conference will contribute to effective management of the case. We are further mindful of Your Honor's admonition regarding the possible imposition of sanctions should our opposition to the motion to dismiss be without merit, and would like to clarify our position that the Fordes have been wronged by the actions of Prudential and the Fund Defendants and have very real claims deserving of redress.

---

[1]   The New York City District Council of Carpenters Annuity Fund, Frank G. Spencer, John Ballantyne, Douglas J. Mccarron, Paul Tyznar, Bryan M. Winter, John Delollis, Catherine Condon, David T. Meberg, Paul O'Brien, and Kevin O'Callaghan are referred to herein as the "Fund Defendants."

The Honorable Loretta A. Preska
May 13, 2013
Page 2

## Procedural Background

Prior to reassignment of this case from Judge Nathan to Judge Sand, the parties submitted a joint letter and a case management plan to Judge Nathan at her request. Among the issues to be addressed at the Initial Pretrial Conference, which were set forth in the case management plan, was Prudential's intention to file an amended complaint to amend the named trustees of the District Council Annuity Fund (the "Fund Defendants").[2] Such an amendment was promised because the Fund Defendants' answer to the original complaint indicated that many of the trustees named in the complaint were not trustees of the Fund at the time of the filing of the interpleader action.[3]

In the letter and plan, Prudential's intention to file a motion to dismiss the Fordes' counterclaims was also indicated. For some reason, Prudential never filed an amended complaint. They filed only the currently pending motion to dismiss which, given that the subject matter jurisdiction of this Court is unresolved, is premature.

Judge Sand suspended the briefing schedule as to Prudential's motion to dismiss and indicated his intention to conduct an initial conference in the interpleader action. However, before such a conference could be scheduled and held, the matter was reassigned again, this time to Judge Furman. Shortly thereafter, the matter was reassigned again, to Your Honor.

## Factual Background

The Court is fully aware of the history of the criminal prosecution of our client. his guilty plea and resultant incarceration. The facts concerning the handling and disposition of his IRA account are relevant to the issues raised in the interpleader action and on the motion to dismiss. A brief recitation of the most pertinent facts culled from documents previously submitted to the Court are illustrative, as follows:

November 4, 2010 -  Mr. Forde rolls over funds held in an Annuity account with the NYC District Council of Carpenters into a Prudential Smart Solution IRA account managed by Prudential.

January 2011 -  Mr. Forde pleads guilty to certain criminal charges.

February 18, 2011 -  Counsel for the Fund Defendants, Raymond G. McGuire, Esq. and

---

[2] Copies of the joint letter to Judge Nathan and the case management plan are attached hereto, collectively.

[3] See Fund Defendants' Answer, dated August 13, 2012, ¶¶ 7-17.

The Honorable Loretta A. Preska
May 13, 2013
Page 3

Elizabeth O'Leary, Esq., wrote to Judge Marerro and the U.S. Attorney asking for an award of a lump sum payment from the Fordes' IRA account. (See Exhibit 2 to the Fordes' Answer at pgs. 6-7).

March 22, 2011 -  Counsel for the Fund Defendants, Elizabeth O'Leary, wrote to Prudential requesting "that Prudential . . .immediately place an administrative hold on [Michael] Forde's [IRA] account pending further notice."

March 24, 2011 -  Prudential complies with the request without notice to the Fordes.

August 5, 2011 -  The Fund Defendants commence the main action.

July 2, 2012 -  Prudential commences the interpleader action, a year and four months after the restraint was put in place.


**Prudential Acted in Concert With the Fund Defendants to
Concoct an "Adverse Claim" for Purposes of Filing
this Interpleader Action**

As has been shown in the pleadings and letters to Judge Nathan heretofore submitted and further fleshed out below, the interpleader has been collusively manufactured by the Fund Defendants and Prudential. There is ample reason to believe that a special and collusive relationship exists between Prudential and the Fund Defendants. The Fund is not an arms-length judgment creditor seeking a restraint of a judgment debtor's funds deposited with a disinterested financial institution. Rather, the Fund is one of a family of Carpenters' Union annuity, pension and other benefit funds for which Prudential holds, invests, and manages millions of dollars of assets and from which they earn considerable fees.

It has been our stated belief on behalf of the Fordes that when the Fund failed to obtain an order from Judge Marerro in the criminal action affecting the Fordes' IRA account at Prudential[4], instead of seeking a court order of restraint or attachment of the IRA account, they sought extra-legal and extra-judicial help from Prudential though their long-time relationship manager at Prudential, Carl Wagner.[5] In writing to Mr. Wagner, counsel for the Fund Defendants did not write to a Prudential officer with responsibility for its Simple Solutions IRAs nor did it send its correspondence to the legal department of Prudential. Rather, she wrote to Mr. Wagner,

---

[4] See Letter of Raymond G. McGuire, Esq. and Elizabeth O'Leary, Esq., dated February 18, 2011, pgs. 6-7, annexed as Exhibit 2 to the Fordes' Answer.

[5] See Letter of Elizabeth O'Leary, Esq., dated March 22, 2011, annexed as Exhibit 1 to the Fordes' Answer.

The Honorable Loretta A. Preska
May 13, 2013
Page 4

Prudential's "Director of Key Account Management for Prudential Retirement." She did so after being rebuffed the month before by both the U.S. Attorney's Office and Judge Marrero. She did so knowing full well that Mr. Forde's annuity funds had been rolled over into an IRA by Mr. Forde and out of the Fund's plan assets, legally and properly and in keeping with plan rules, Prudential rules and the Internal Revenue Code. She did so knowing that the IRA account was an asset exempt from execution if the Fund Defendants were to be awarded a judgment in a civil action to be filed[6]. She did so promising "further notice" to Prudential of pending legal action against Mr. Forde which was never provided. She did so requesting an "administrative hold" even though the money was no longer in the Annuity Fund. She did so promising that a "court order" would be sought "requiring that Mr. Forde's Annuity Fund account balance be turned over to the Funds" even though no such order was ever applied for and there was no such "Annuity Fund account balance" because the monies were now in an IRA and beyond her clients' reach through such measures. Moreover, the IRA account in question is not subject to attachment by a judgment creditor under law and under the terms of the Prudential Customer Agreement which provides under Section 8.14:

> **The assets in your IRA shall not be responsible for the debts, contracts or torts of any person entitled to distributions under this Agreement.**

Shockingly, despite owing Mr. Forde at least the basic duties of a custodian and agent, which Prudential's Customer Agreement acknowledges[7], and, we would submit, an implied covenant of good faith and fair dealing, Mr. Wagner and Prudential willingly obliged counsel for the Fund Defendants. They did so with no notice to Mr. Forde or his counsel and they did so without tasking Fund counsel for the court order or further notice which had been promised. They did so despite the clear conflict of interest resulting from such an action in that they maintained contractual and agency/principal relationships with both Mr. Forde and the Fund. Most importantly, they did so knowing full well that the IRA was no longer a Fund plan asset susceptible to an extra-judicial "administrative hold" requested by the Fund which formerly held the assets.[8] It is also notable that the counsel for the Fund Defendants requested an dministrative

---

[6] The Fordes IRA account is exempt from enforcement of money judgments, attachment or restraint under CPLR § 5205. At the time of the restraint not only was there no civil judgment against Mr. Forde but an action had not even been commenced.

[7] See Prudential Customer Agreement annexed as Exhibit B to the Declaration of Joy B. Ericckson submitted in support of Prudential's motion to dismiss at Section 8.03, "By performing services under this Agreement we are acting as your agent."

[8] See Prudential Simple Solutions IRA Brochure, annexed hereto, which states in pertinent part: "The Prudential SmartSolution IRA is not affiliated with an employer-sponsored plan or plan sponsor, and a rollover to an IRA means you are no longer part of an employer- sponsored plan. Once assets are rolled over to an IRA, they

The Honorable Loretta A. Preska
May 13, 2013
Page 5

hold on an "annuity account" and not on the Smart Solution IRA account which was and
continues to be restrained. The key fact of this matter is that the IRA account is not a Fund plan
asset. That is why counsel for the Fund Defendants did not long ago move for its restraint. That
is why Prudential could not properly place an "administrative hold" thereon. Most importantly
for purposes of determining whether there is subject matter jurisdiction in this Court for this
interpleader action, there can be no good-faith belief by either Prudential or the Fund Defendants
that the latter have a genuinely "adverse" claim to the IRA monies, as required by § 1335. Once
the funds were rolled over into an IRA account, outside of the Plan assets, the Fund Defendants
ceased to have a genuine adverse claim to the money superior to any other pre-judgment creditor.
Pre-judgment creditors do not have a right to freeze assets absent a court order. Had this been a
truly arms-length interpleader scenario, Prudential would have notified the Fordes of the letters
from counsel to the Funds and refused to restrain the account without evidence of a court order.
As articulated by Prudential in its motion to dismiss, Prudential is not a fiduciary[9] but a mere
custodian of the Fordes' funds. As such it has no power to restrain the account absent a Court
order. We reasonably believe that the restraint must have been violative of the internal policy and
procedures of Prudential, and were we allowed discovery, we would be able to prove such a
violation.

It is incredible that a financial institution would permit a Director of Key Account Management
to effectuate the restraint of a non-related account at the behest of and to benefit a "Key Account"
holder to the detriment of another small account holder on the basis of a letter from a pre-
judgment creditor's attorney, as a matter of policy. Imagine the Fordes' park their car in Tip Top
garage with a custodian/bailee; that the garage attendant receives a letter from the prior owner of
the car stating that the Fordes failed to pay him in full the purchase price of the car and
requesting that the car be restrained, promising that an action would be commenced and a
judgment and order would issue awarding him the car. Imagine further that the garage attendant
complies and refuses to give the Fordes their car when they return to the garage. The garage
attendant justifies the restraint by saying "well, the car is still here. I even waxed it for you."

The approach taken by the Fund Defendants and facilitated by Prudential ran an end-run around
Federal and State law[10] governing attachment and restraint. Prudential, in concert with counsel

---

normally cannot be rolled back to a former employer's plan."

[9] A point the Fordes will concede in an amended answer and counterclaims if granted leave to re-plead by
the Court.

[10] The provisions of Article 52 of the CPLR were violated by Prudential's conduct. Ms. O'Leary's letter
demanding restraint did not constitute valid Article 52 notices and Prudential should not have instituted the restraint.
"Failure to serve the notice and forms renders the execution void, and the banking institution shall not levy upon the
account." CPLR Article 5222-a(b)(2).

The Honorable Loretta A. Preska
May 13, 2013
Page 6

for the Fund Defendants, provided a restraint on the Fordes' property for what is now more than two years with no ink having been wasted on a motion for attachment and in what must have been a direct violation of their internal policies and procedures. The Fund Defendants with Prudential's help accomplished through a back-door what the Fund Defendants could not accomplish through the front door by moving before Judge Marrero, Judge Nathan, Judge Sand, Judge Furman or Your Honor in the main action. It is this collusive behavior of Prudential, its failure to provide the Fordes with notice depriving them of their due process rights with respect to their property, Prudential's obvious conflict of interest in serving the demands of the Fund Defendants, restraining the account without a court order and continuing the restraint despite the Fordes' demand for their property, violation of internal policies and procedures, negligence, gross negligence and indeed willful misconduct, self-dealing, all in violation of the Fordes' property rights, which make Prudential liable to the Fordes' for their damages.

### Minimum Diversity Has Not Been Properly Pled or Proven

Prudential continues to advance the Fund Defendants' cause by filing this interpleader action in this Court at this time. If this were an arms-length good faith interpleader action it would have been brought more than a year ago when Ms. O'Leary's letter was first received by Prudential. Instead it is brought after the filing of the main action in federal court rather than in State court so it may be subsumed within the main action, again to the benefit of the Fund Defendants. In order to put the issue before this Court, which is grappling with the Civil RICO action, Prudential strains to meet minimal diversity by naming the Fund Trustees individually as defendants. It is notable that the list of trustees Prudential set forth in their interpleader complaint is identical to the trustees listed in the caption of the main action. Curiously, however, while the complaint in the main action does not set forth the domiciliary status of those individual trustees, Prudential had no problem averring specific facts as to the domiciles of those Fund trustees in their interpleader complaint. It is reasonable to assume that such information came from counsel for the Fund Defendants.

A problem arose, however, when counsel for the Fund Defendants averred different facts in their answer with the apparent result that no current trustees were diverse from the Fordes except, according to the answer, Paul O'Brien, who had somehow gone from a New York domiciliary in Prudential's complaint in July 2012 to a New Jersey domiciliary in the Fund Defendants' answer in August 2012.

It is respectfully submitted that whether minimal diversity exists has been made questionable by the pleadings. The complaint, as informed by the answer of the Fund Defendants, is facially

The Honorable Loretta A. Preska
May 13, 2013
Page 7

unclear as to whether this Court has subject matter jurisdiction on grounds of minimal diversity and whether the Fund Defendants' claim to the Fordes' IRA account is a good-faith adverse claim as required under 28 U.S.C. §1335.[11]

In New York Life Ins. Co. v. Connecticut Dev. Auth., 700 F.2d 91 (2nd Cir. 1983), the Court pointed out that "[n]ormally an interpleader action is concluded in two stages, the first determining that the requirements of § 1335 are met and relieving the plaintiff stakeholder from liability, and the second adjudicating the adverse claims of the defendant claimants; this bifurcation is not mandatory, however, and the entire action may be disposed of at one time. *See* 3A J. Moore & J. Lucas, *Moore's Federal Practice* ¶¶ 22.14[1], [2] (2d ed. 1982)." New York Life Ins. Co., supra, at 95.

Even if the Court were to find minimal diversity exists and allow the naming of a dispensable party to secure diversity, the problem remains that the adverse claim was contrived by Prudential and the pre-judgment creditor.

It is respectfully requested that the Court hold a conference to discuss this matter, grant the Fordes' leave to file an amended answer and supplement and re-plead its claims against the parties. As shown above, there is ample evidence of wrongdoing on the part of Prudential to maintain counterclaims against it and allow discovery on the claims.

Respectfully yours,

Dino J. Lombardi
Attorney for Forde Defendants

Laure Salerno
Attorney for Forde Defendants

cc:    David Elbaum, Esq. (Via E-Mail delbaum@bruneandrichard.com)
       G. Peter Clark, Esq. (Via E-Mail Clark@kmm.com)

---

[11] It was the Fordes' intention to raise the issue of subject matter jurisdiction in an amended answer which we anticipated filing after service of the promised amended complaint, and at the scheduled conference before Judge Nathan but before such a conference was held the matter was reassigned to Judge Sand as related to the main action.

**BRUNE & RICHARD** LLP

Tel 212 668 1900
Fax 212 668 0315

One Battery Park Plaza
New York, NY 10004

www.bruneandrichard.com

May 16, 2013

RECEIVED

MAY 17 2013

LORETTA A. PRESKA
CHIEF U.S. DISTRICT JUDGE
S.D.N.Y.

**BY HAND DELIVERY**

The Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

   Re: **Prudential Investment Management Services LLC v. Michael J. Forde,**
     **Case No. 12-cv-5168 (LAP)**

Dear Judge Preska:

   We are counsel for Prudential Investment Management Services LLC and Prudential Bank & Trust, FSB (collectively, "Prudential"), plaintiffs in this interpleader action, and write to respond to the letter from counsel for the Forde Defendants dated May 13, 2013.

<u>**Prudential's Motion to Dismiss**</u>

   By way of background, on August 14, 2012, the Fordes asserted four counterclaims against Prudential. Specifically, the Fordes alleged claims of breach of fiduciary duty, breach of contract, negligence and conversion. In essence, the Fordes claimed that Prudential acted improperly by placing a freeze on Mr. Forde's IRA at the request of the New York City District Council of Carpenters Annuity Fund (the "Fund") without a court order. On September 14, Prudential filed a motion to dismiss the counterclaims. As Prudential demonstrated in its motion papers, (i) the breach of fiduciary duty failed because the Fordes failed to allege any facts showing that Prudential owed them a fiduciary duty and the account agreement specifically contradicts such a claim; (ii) the Fordes failed to adequately allege a breach of contract claim because they did not identify any contractual provision that was allegedly breached and the account agreement specifically permitted an interpleader action to resolve disputed claims to the account; and (iii) the Fordes' tort claims for negligence and conversion are duplicative of their contract claim and barred by the economic loss doctrine.

   During the status conference on April 29, 2013, Your Honor asked the Fordes' counsel to explain whether they had a good faith basis to oppose Prudential's motion to dismiss (4.29.13 Tr. at 5, 7) and, after discussion, stated "I don't think you have a Rule 11 basis for opposing this motion." (*Id.* at 9.) Ultimately, Mr. Lombardi requested two weeks to prepare a response to the Court's questions. (*Id.* at 12-13.)

The Honorable Loretta A. Preska
May 16, 2013
Page 2

The Fordes' May 13 letter does not make any attempt to defend the counterclaims they asserted or to explain what good faith basis they would have to oppose Prudential's motion to dismiss. Indeed, the Fordes expressly concede that Prudential did not owe them a fiduciary duty, thus negating their breach of fiduciary duty claim. (5.13.13 Forde Ltr. at 5 & n.9.)

Rather than address the issues raised by the Court, the Fordes seek leave to move to file an amended answer to re-plead their counterclaims and also request a "full and comprehensive conference" before requiring a response to the pending motion to dismiss. (5.13.13 Forde Ltr. at 1.) Setting aside the inconsistency between the Fordes' two requests, there is no basis for further delay of an adjudication of Prudential's motion to dismiss. The Fordes have had since September 2012 to formulate an opposition, were asked for a summary of their arguments during the April 29 conference, and were then granted an additional two weeks to conduct further research. The May 13 letter demonstrates that the Fordes have no good faith basis to oppose the motion to dismiss. They failed to present any legal arguments at all in their letter.

The Fordes' May 13 letter merely rehashes, at great length, the same factual points that they raised during the April 29 conference about the history of the freeze on Mr. Forde's IRA. But the letter does not explain how those alleged facts give rise to any cognizable legal claims for relief. While the Fordes assert that they "have very real claims deserving of redress," they do not identify any legal causes of action that could survive a motion to dismiss.

The central theme of the Fordes' letter is that there are actually no competing claims to the funds in the IRA because the IRA is protected against execution by judgment creditors. (5.13.13 Ltr. at 3-6.) However, as the Court noted during the April 29 conference, the issue of whether the Fund will ultimately be able to recover the assets is entirely distinct from whether there are competing claims to the disputed assets and whether the Fordes have any viable claims against Prudential. (4.29.13 Tr. at 5-6.) Moreover, the Fordes' suggestion that there are no adverse claims to the assets is simply nonsense, and the Court needs to look no further than the Fordes' own statements to dispel that theory. Thus, in their Answer, the Fordes expressly admitted Prudential's allegation that "[b]oth the Fordes and the Fund Claimants claim to be entitled to the Disputed Assets." (Compl. ¶ 36; Forde Ans. [Dkt. 26] ¶ 36.) That is a judicial admission that binds the Fordes throughout the litigation. *See, e.g., Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2006) ("Facts admitted in an answer, as in any pleading, are judicial admissions that bind the defendant throughout this litigation."). Similarly, at the April 29 conference, Your Honor asked Ms. Salerno, "Do you disagree that there is a dispute over who gets the funds held by Prudential?", and she responded, "I do not, your Honor." (4.29.13 Tr. at 7.)

There also is no basis for the Fordes' suggestion that the interpleader action has been "collusively manufactured" or "contrived." (5.13.13 Forde Ltr. at 3, 7.) There are competing claims to the disputed assets held by Prudential. The freeze imposed by Prudential in March 2011 permitted Mr. Forde to make changes to his investment selection and to his beneficiaries. Mr. Forde did not seek to make any such changes. And after Ms. Forde sought to withdraw the assets in June 2012, Prudential promptly filed the interpleader action to obtain a judicial

The Honorable Loretta A. Preska
May 16, 2013
Page 3

resolution of the competing claims. (Compl. ¶¶ 27, 30, 31, 32; *allegations admitted in* Forde Answer [Dkt 26] ¶¶ 27, 30, 31, 32.)

The Court should grant Prudential's motion to dismiss. Prudential further submits that leave to amend the counterclaims should be denied as futile. The Fordes have not identified any cognizable claims in their letter. To the extent the Fordes are seeking to assert some form of contract action, it would be barred by the contractual provision that specifically authorizes Prudential to seek judicial resolution of disputed claims. (*See* MTD [Dkt. 31] at 12 (quoting Custodian Agmt. § 8.03).) Similarly, to the extent the Fordes are seeking relief under tort theories, the claims are duplicative of the contract claim and barred by the economic loss doctrine. (*See id.* at 12-15.)

## **The Court Has Subject Matter Jurisdiction**

The Court should also reject the Fordes' suggestion that Prudential's motion to dismiss is "premature" because the existence of subject matter jurisdiction is "unclear." (5.13.13 Forde Ltr. at 2, 7.) The current record establishes that the Court has subject matter jurisdiction under 28 U.S.C. § 1335. The Fordes do not have any good faith basis to file a motion challenging jurisdiction.

Under Section 1335, the Court has jurisdiction because there is "minimal diversity" between at least two adverse parties claiming entitlement to the disputed assets. *See, e.g., Truck-A-Tune, Inc. v. Re*, 23 F.3d 60, 62 (2d Cir. 1994); *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 393 (S.D.N.Y. 2006). The Fordes have admitted that Mr. Forde is a citizen of New York. (Forde Ans. [Dkt. 26] ¶ 5.) And the Fund has admitted that Defendant Paul O'Brien is a citizen of New Jersey. (Fund Ans. [Dkt. 24] ¶ 16.) That is the end of the matter.[1]

This is the first time that the Fordes have questioned the Court's subject matter jurisdiction. On September 11, 2012, the parties submitted a joint letter to Judge Nathan in anticipation of a status conference then-scheduled on September 19. (The September 11 letter is attached as an exhibit to the Fordes' May 13, 2013 Letter.) In that submission, signed by

---

[1]      There is no question that the other jurisdictional requirements have been met. The amount in dispute exceeds $500 dollars and Prudential has filed a surety bond with the Clerk of the Court in the amount of the IRA assets as of the date the interpleader action was commenced. *See* 28 U.S.C. § 1335. As a Fund Trustee, Mr. O'Brien is a real party in interest who was properly named in this action. *See* Fed.R.Civ.P. 17(a); *NYSA-ILA GAI Fund v. Poggi*, 617 F. Supp. 847, 849-850 (S.D.N.Y. 1985). The Fund is an express trust created pursuant to ERISA. *See, e.g., Dist. Council 1707 Local 389 Home Care Emples. Pension v. Strayhorn*, No. 11 Civ. 7911 (PAC), 2013 U.S. Dist. LEXIS 42554, at * 13 n.7 (S.D.N.Y. Mar. 25, 2013) ("The Court notes that 'Congress [has] directed that union welfare funds be established as written formal trusts.'" (quoting *N.L.R.B. v. Amax Coal Co.*, 453 U.S. 322, 329, (1981)); *see also* 29 U.S.C. § 186(c)(5); *Lenon v. St. Paul Mercury Ins. Co.*, 136 F.3d 1365, 1370 (10th Cir. 1998) (finding that an ERISA benefit plan is an express trust).

The Honorable Loretta A. Preska
May 16, 2013
Page 4

Mr. Lombardi, the parties stated that "[t]his Court has subject matter jurisdiction over Prudential's interpleader complaint under 28 U.S.C. § 1335." (9.11.12 Joint Ltr. at 3.)  The Fordes further asserted that "jurisdiction lies with this Court on their counterclaims under 28 U.S.C. § 1367" (*id.*), which provides for supplemental jurisdiction only when the Court already has original jurisdiction over the matter.  While the Fordes now claim that they intended to "raise the issue of subject matter jurisdiction … at the scheduled conference before Judge Nathan" (5.13.13 Forde Ltr. at 7 n.11), the September 11 submission to Judge Nathan said the exact opposite.

The Fordes also seek to manufacture an issue out of the fact that certain of the Fund's Trustees had been replaced by the time the interpleader complaint was filed.  (5.13.13 Forde Ltr. at 6.)  As an initial matter, the Fordes' suggestion that Prudential obtained jurisdictional information from the Fund is clearly baseless.  (*Id.*)  If Prudential had been coordinating with the Fund, it would not have made a mistake in naming the Trustees.  In any event, while the Fund's answer shows that certain Trustees have been replaced, the changes did not impact the Court's subject matter jurisdiction.  As noted above, Defendant O'Brien is diverse from Mr. Forde.  In addition, the Fund has informed both Prudential and Mr. Lombardi of the current Trustees, and that list shows that a second Trustee is also a citizen of New Jersey.[2]

Because the change in the Fund Trustees did not impact jurisdiction, Prudential discussed with counsel for the Fordes and the Fund that it would seek to amend the complaint in the most efficient manner possible.  Since answers and cross-claims had been filed, Prudential hoped to amend the complaint via stipulation to avoid the unnecessary and wasteful process that would result if new response obligations were triggered by filing an amended complaint.  Neither the Fordes nor the Fund raised any objections or concerns with that suggested process.  To put the issue to rest, however, Prudential respectfully requests leave of the Court to file an amended interpleader complaint to correct the caption and substitute the new Trustees as defendants.

*          *          *

The Court should follow the standard practice for interpleader actions.  The Court has subject matter jurisdiction and the other requirements under Section 1335 have been met.  Accordingly, the Court should dismiss the Fordes' counterclaims, relieve Prudential of any liability and turn to the merits of the competing claims of the Fordes and the Fund.  *See, e.g.,* *Fid. Brokerage Servs., LLC v. Bank of China*, 192 F. Supp. 2d 173, 178-79 (S.D.N.Y. 2002).

Respectfully,

David Elbaum

---

[2]      *See* Email from P. Clark to D. Elbaum and D. Lombardi, dated Aug. 28, 2012 (attached hereto).

The Honorable Loretta A. Preska
May 16, 2013
Page 5


Attachment

cc:   By Email (w/attachment):
      Dino J. Lombardi
      Laure Salerno
      G. Peter Clark

**David Elbaum**

| | |
|---|---|
| **From:** | Clark, Peter <Clark@kmm.com> |
| **Sent:** | Tuesday, August 28, 2012 3:01 PM |
| **To:** | David Elbaum; DinoLombardiLaw@aol.com |
| **Subject:** | Prudential et al vs. Forde et al - Trustees |
| **Attachments:** | 4819-9512-3472 v.1 - CBF - ALL TRUSTEES LIST 8.27.2012.pdf |

David and Dino – Attached is a list of the current Trustees of the Annuity Fund, with their state of residence and citizenship (two are residents of New Jersey; the balance reside in New York).

Dino – Please call me about the proposition that you have previously advanced.

G. Peter Clark
Counselor-at-Law
Kauff McGuire & Margolis LLP
950 Third Ave., New York, NY 10022
Tel. 212.909.0710   FAX 212.909.3510
EMAIL: Clark@kmm.com.
This message is intended only for the addressee(s) named above; if you are not an intended recipient, please inform me by reply and delete all copies of this message.

1

# NEW YORK DISTRICT COUNCIL OF CARPENTERS BENEFIT FUNDS

## EMPLOYER TRUSTEES

David Meberg- Chairman
Consolidate Carpet
Residence: New York.

Kevin O'Callaghan- Trustee
Universal Builders Supply
Residence: New York.

Catherine Condon- Trustee
Residence: New York.

Paul O'Brien- Trustee
Building Contractors Association
Residence: New Jersey.

Joseph S. Kaming- Trustee
Residence: New York.

John DeLollis- Trustee
The Association of Wall-Ceiling
Residence: New York.

## UNION TRUSTEES

Michael Bilello, Chairman
Residence: New York.

Paul Capurso, Trustee
Residence: New York.

Bill Lebo, Trustee
Residence: New York.

Paul Tyznar, Trustee
Residence: New York.

John Sheehy, Trustee
Residence: New Jersey.

Michael Cavanaugh, Trustee
Residence: New York.

RECEIVED

MAY 20 2013

LORETTA A. PRESKA
CHIEF U.S. DISTRICT JUDGE
S.D.N.Y.

# LOMBARDI & SALERNO PLLC

Attorneys at Law

⬤⬤

Dino J. Lombardi
Laure Salerno

52 Duane Street • 7ᵗʰ Floor
New York, New York 10007
Tel. No. (212) 619-8328
Fax. No. (212) 732- 6323

May 17, 2013

**By Hand Delivery**

The Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re:   ***Prudential Investment Management Services LLC, et al. v.
      Michael J. Forde, et al., Case No. 1:12-cv-05168 (LAP)***

Dear Judge Preska:

As you know, this firm represents the defendants, Michael J. Forde and Mary Forde (the
"Fordes"), in the above-referenced interpleader action.

In response to Mr. Elbaum's May 16 letter to the Court we simply want to reiterate our desire to
re-plead the answer and counterclaims. Prior to service of the motion to dismiss we were
promised an amended complaint. Service of that amended complaint would have provided us
with the opportunity to re-plead our answer and counterclaims[1]. Rather than allow us that
opportunity, Mr. Elbaum moved to dismiss the answer in its current form. While we understand
that he does not want the Court to give us a chance to re-plead the very real claims our clients
have against Prudential for its wrongful conduct, we implore the Court to grant us such an
opportunity. We relied on Prudential's representation that it would amend the complaint[2] as an

---

[1]   Prior to the filing of the interpleader action we asked Prudential for relevant documentation. We had not
been given a copy of the customer agreement. If we had it we would not have pled breach of fiduciary duty or
contract claims. It was not until the motion to dismiss was filed that we had a full opportunity to review the operative
document.

[2]   The complaint and not the caption requires re-pleading as the diversity of trustees was not pled in the
original complaint and the Fund Defendants' answer does not "admit" diversity jurisdiction but denies the allegation
that Mr. O'Brien is a New York resident. On its face, the complaint is deficient.

opportunity to re-plead the counterclaims[3].

As stated in our previous correspondence, we will not be asserting a claim for breach of fiduciary duty against Prudential and concede that Prudential is not a fiduciary but is a mere custodian and agent under the customer agreement. Having seen the customer agreement, there is no contract provision which we can point to that Prudential specifically breached as the contract was one of adhesion and did not provide many affirmative obligations of Prudential. Therefore, we will not be asserting any contract claims in an amended answer.

As also stated in the prior correspondence, as custodian, Prudential owed the Fordes a duty of care which we believe was breached by its restraint of the account in contravention of its power and authority as a custodian. While it is arguable that Prudential may have had authority to restrain the account as a fiduciary, as a custodian it surely did not. The Fordes' tort claims arise from the custodial relationship and the agency/principal relationship both of which Prudential admits, and neither of which arise solely from the contract. The Fordes' claims sounding in tort and arising out of the breaches of those common law duties cannot be duplicative of contract claims which are not being made nor can they run afoul of the economic loss doctrine. Surely a cause of action for concert of action does not arise from the customer agreement. Rastelli v. GoodyearTire & Rubber Co., 79 N.Y.2d 289, 295, 591 N.E.2d 222 (1992). In Rastelli the Court recognized :

> Joint liability for the tortious infliction of harm, whether intentional or not, against all persons acting in concert with the actual wrongdoer was recognized in this State at least as early as 1896 (citations omitted) ...Under the modern formulation of this theory of recovery, one may be liable for the tortious conduct of another person by, *inter alia*, engaging in a tortious act in concert or pursuant to a common design with the other person, or giving substantial assistance or encouragement to the other person with knowledge that the other's conduct constitutes a breach of duty. Citing Restatement [Second] of Torts § 876 [a], [b].[4]

We allege in our earlier correspondence of May 13, 2013 that Prudential was negligent, grossly negligent and indeed engaged in willful misconduct when it froze the Fordes' assets without notice, on the request of a mere pre-judgment creditor. We believe that the procedures employed by Prudential were in violation of its own policies and possibly financial regulations governing the conduct of custodians. We raised in our correspondence and indeed in the counterclaims sufficient facts to state a claim of concert of action in that the Fund Defendants and Prudential acted in concert to tortiously deprive the Fordes of their property. We believe that an amended

---

[3] Although Mr. Elbaum states we had since September 2012 to amend our answer, Judge Sand specifically suspended the briefing schedule after the filing of the motion to dismiss until such time as an initial conference was held. We refrained from running up fees for our clients until after the initial conference at which we could discuss an appropriate response and schedule with Judge Sand.

[4] While it is our preference to cite law in briefs and not letters, Mr. Elbaum criticized our prior correspondence as lacking case citations.

complaint will more specifically plead tort based claims based on the egregious conduct of Prudential.

We note that Mr. Elbaum does not defend or address Prudential's conduct and lack of authority to freeze the Fordes' account; rather he simply points to the inadequacies in the counterclaims which would have been amended upon receipt of the amended complaint. Should Prudential be dismissed from this action, we simply request that the Court allow the dismissal because the Court finds no wrongdoing on its part rather than because of an insufficient pleading which was expected to be amended in response to the promised amended complaint.

Prudential's conduct herein warrants a review by this Court of the viability of the Interpleader action. As stated by the Court in New York Life Ins. Co. V. Connecticut Dev. Auth, 700 F.2d 91, 96 (2nd Cir. 1983) "Judgment discharging the stakeholder in an interpleader action may, of course, be delayed or denied if there are serious charges that the stakeholder commenced the action in bad faith." Citing, 3A J. Moore & J. Lucas, supra, ¶ 22.02[1], at 22-7; cf. Companion Life Ins. Co. v. Schaffer, 442 F.Supp. 826 (S.D.N.Y. 1977).

We contend the Interpleader action was brought in bad faith either to further the interests of Prudential's big money depositor, the Fund Defendants, or to further its own interests which is to deflect the Court's attention from its wrongdoing. Prudential simply could not freeze the Fordes' account on the basis of a letter from a pre-judgment creditor. If they are allowed to do it to the Fordes they will be allowed to do it for any other less controversial depositor.

At page 2 of his May 16 letter Mr. Elbaum states that Prudential promptly brought the Interpleader action. The action was brought more than a year after the secret freeze, not upon an attempted withdrawal of funds but only upon our asking questions which they refused to answer and our demanding the release of the improper restraint.

Also on page 2 Mr. Elbaum states that we agreed this Court has subject matter jurisdiction. The "admission" in the joint letter to Judge Sand does not constitute a waiver of a claim of lack of subject matter jurisdiction nor does it constitute a stipulation. As the Court is well aware parties cannot stipulate to subject matter jurisdiction. Only the Court can examine whether it exists and if it does not, the Court must dismiss the complaint. Similarly, whether we "admit" that the Fund Defendants are "claiming" that they are entitled to the account does not equate to an "admission" that a truly good faith, arms-length genuine adverse claim exists as required for diversity jurisdiction, and to defeat a claim that the interpleader action was brought in bad faith. Similarly still, as stated at page 4 of Mr. Elbaum's letter, whether or not the Fund will be able to ultimately recover and whether there are competing claims may be separate issues. But to merely label the money "disputed assets" is insufficient to either confer the authority upon Prudential to restrain the account or to satisfy the jurisdictional requirements of 1335 that there be a genuine good faith belief that the Fund Defendants have an adverse claim to the money. Mr. Elbaum's arguments fall in the semantics category.

"A basic jurisdictional requirement of statutory interpleader is that there be adverse claimants to a

necessary to justify interpleader." Id.  In Wash. Elec. Co-op. v. Paterson, Walke & Pratt, 985 F.2d 677, 680 (2nd Cir. 1993), interpleader was inappropriate where one claimant did not have a colorable claim to the asset. Moreover in Wash. Elec the interpleader plaintiff asserted that the action was proper in Federal Court in consolidation with other claims rather than State Court in service of interests of judicial economy.  The court found, however, "interests of party convenience and judicial economy that would be served by trial of all claims in a single proceeding 'cannot compel the otherwise inappropriate joinder of claims in interpleader.'" Libby, McNeill & Libby v. City Nat'l Bank, 592 F.2d 504, 509 (9th Cir. 1978) (quoting Gaines v. Sunray Oil Co., 539 F.2d 1136, 1142 (8th Cir. 1976)); see also Lafayette Corp. v. Bank of Boston Int'l S., 723 F. Supp. 1461, 1466 (S.D.Fla. 1989).

In short, there is ample federal authority for the proposition that a mere "claim" to an asset does not rise to the level of an adverse claim sufficient to confer the court with interpleader jurisdiction, thereby warranting a review of Prudential's conduct herein on jurisdictional grounds.

It is respectfully requested that the Fordes be permitted to file an amended answer and counterclaims, and that the interpleader action be reviewed for subject matter jurisdiction.

Respectfully,


_____
Dino J. Lombardi

Laure Salerno

cc:    David Elbaum, Esq. (Via E-Mail)
       Peter Clark, Esq. (Via E-Mail)

-4-

# BRUNE & RICHARD LLP

Tel 212 668 1900
Fax 212 668 0315

One Battery Park Plaza
New York, NY 10004

www.bruneandrichard.com

May 22, 2013

**BY FACSIMILE**

The Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

>    Re:    **Prudential Investment Management Services LLC v. Michael J. Forde,**
>            **Case No. 12-cv-5168 (LAP)**

Dear Judge Preska:

We are counsel for Prudential Investment Management Services LLC and Prudential Bank & Trust, FSB and write to respond to the May 17 letter from the Forde Defendants.

*First,* this exchange of correspondence began with the Fordes' request for more time to respond to Your Honor's question of whether they had a good faith basis to oppose Prudential's motion to dismiss. (4.29.13 Tr. at 5, 12-13.) Over the span of two letters and nearly 11 pages,[1] the Fordes never stated that they have such a basis. Accordingly, the motion should be granted.[1]

*Second,* the Court has subject matter jurisdiction over this interpleader action. Since the Fund has admitted that Defendant Paul O'Brien is a citizen of New Jersey (Fund Ans. [Dkt. 24] ¶ 16), there can be no good faith dispute that minimal diversity exists. Moreover, the Fordes cannot avoid the factual admission in their Answer that there are competing claims to the disputed assets in the IRA. (Compl. ¶ 36; Forde Ans. [Dkt. 26] ¶ 36.) While the Fordes contest the merits of the Fund's claim to those assets, that does not defeat interpleader jurisdiction. To the contrary, in determining whether jurisdiction exists, "a court need not analyze the merits of the claims because 'the stakeholder should not be obliged at its peril to determine which of two claimants has the better claim.'" *Fid. Brokerage Servs., LLC v. Bank of China,* 192 F. Supp. 2d 173, 178 (S.D.N.Y. 2002) (quoting *John Hancock Mutual Life Ins. Co. v. Kraft,* 200 F.2d 952, 954 (2d Cir. 1953)). Indeed, the language of Section 1335 creates jurisdiction even "for the possibility of prospective claims." *Id.* (quotation omitted). Here, the Answers of the interpleader

---

[1]      Contrary to the suggestion in their letter (5.17.13 Forde Ltr. at 1), the first time the Fordes mentioned that they wanted to amend their counterclaims was after Your Honor raised the specter of Rule 11 sanctions during the April 29 conference. (4.29.13 Tr. at 9.)

105828

The Honorable Loretta A. Preska
May 22, 2013
Page 2

defendants demonstrate that there is a conflict over the assets in the IRA. (Forde Ans. [Dkt. 26] ¶ 36; Fund Ans. [Dkt. 24] ¶¶ 36, 43-55.) In these circumstances, Prudential properly invoked the Court's jurisdiction to protect itself "from undue harassment in the face of multiple claims against the same fund, and to relieve [itself] from assessing which claim among many has merit." *Fid. Brokerage Servs.*, 192 F. Supp. 2d at 178.[2]

*Third*, the Fordes cannot manufacture a tort claim merely by agreeing to withdraw their breach of contract claim. (5.17.13 Forde Ltr. at 2.) Courts routinely dismiss negligence claims for failure to allege an independent, non-contractual duty of care even where the parallel contract claims have also been dismissed. *See, e.g., Acedvedo v. Citibank, N.A.*, No. 10 Civ. 8030 (PGG), 2012 U.S. Dist. LEXIS 40242, at *29-32, *41-43 (S.D.N.Y. Mar. 23, 2012); *Estate of Piper v. Metro. Tower Life Ins. Co.*, No. 07 Civ. 9548 (LTS), 2009 U.S. Dist. LEXIS 69857, at *13-20 (S.D.N.Y. Aug. 10, 2009). Here, the relationship between Prudential and the Fordes is strictly a matter of contract. Because the Fordes cannot allege Prudential owed or breached any non-contractual duties, their negligence claims must be rejected. In addition, the Fordes cannot escape the economic loss rule, which is an independent basis to dismiss any negligence claims. *Manhattan Motorcars Inc. v. Automobili Lamborhini, S.p.A.*, 244 F.R.D. 204, 220 (S.D.N.Y. 2007). The only damages the Fordes seek are for undefined economic loss, not any personal or property injury. (Forde Ans. [Dkt. 26] ¶¶ 48-49, 52-53.) Accordingly, the economic loss rule bars their tort claims. *See, e.g., Travelers Cas. and Sur. Co. v. Dormitory Authority – State of New York*, 734 F. Supp. 2d 368, 379 (S.D.N.Y. 2010); *Manhattan Motorcars*, 244 F.R.D. at 220.

*Fourth*, the Fordes cannot use the "concerted action" doctrine to revive their tort claims. (5.17.13 Forde Ltr. at 2.) The "concerted action" doctrine is not an actual legal claim; instead it is merely a rule of liability that was established "to permit recovery where the precise identification of a wrongdoer is impossible." *Hymowitz v. Eli Lilly Co.*, 73 N.Y.2d 487, 505 (1989). As the case cited by the Fordes states, "[t]he theory of concerted action 'provides for joint and several liability on the part of all defendants having an understanding, express or tacit, to participate in 'a common plan or design to commit a tortious act.'" *Rastelli v. Goodyear Tire Rubber Co.*, 79 N.Y.2d 289, 295 (1992). An essential element of any claim relying on this doctrine is that "each defendant charged with acting in concert have acted tortiously." *Id.* Here, the Fordes have not alleged – and cannot allege – any actual tortious conduct by Prudential. In addition, the Fordes' allegations evince the very opposite of a "common plan or design." Thus, the Fordes claim that the Fund fraudulently induced Prudential to freeze the disputed assets. (Forde Ans. [Dkt. 26] Cross-Claim ¶¶ 59-80.) Moreover, there can be no plausible inference that Prudential brought this interpleader action as part of a conspiracy with the Fund to dispossess the Fordes of the disputed assets. To the contrary, Prudential is seeking judicial resolution of the competing claims to the assets. The Fordes' remedy lies in proving that they have a superior claim to the IRA, not in counterclaims against Prudential.

---

[2]     The cases cited by the Fordes are inapposite. For example, in *Washington Electric Coop., Inc. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 680 (2d Cir. 1993), the district court incorrectly found an interpleader was appropriate over $3 million even though the plaintiff "recognize[d] that there [were] no potentially conflicting claims" to $1.2 million of that sum.

The Honorable Loretta A. Preska
May 22, 2013
Page 3


Prudential is available at the Court's convenience to discuss this matter further.

Respectfully,

David Elbaum

cc:  By Email:
     Dino J. Lombardi
     Laure Salerno
     G. Peter Clark